IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DAVID DIXON, | ) | |
|     Plaintiff | ) | |
| v. | ) | No. 3:06-cv-135 |
| STEVE L. DONALD, Individually, HELEN KAE EDWARDS, DONNA K. EDWARDS, and SHERIFF JAMES L. BERRONG, in his official capacity only, | ) ) ) | |

## **MEMORANDUM OPINION**

       This is a civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff David Dixon contends that he was subject to an arrest without probable cause and the use of excessive force in effecting his arrest by Officer Steven Donald of the Blount County Sheriff's Department. Currently pending are motions for summary judgment of defendant Donald [Court File #15] and defendant James L. Berrong, in his official capacity only [Court File #17]. Plaintiff concedes that the motion of defendant Berrong, in his official capacity only, is well taken and that motion will be granted. However, for the reasons that follow, the motion for summary judgment of defendant Steven Donald [Court File #15] will be denied.

I.

*Factual Background*

The following factual allegations are taken in the light most favorable to the plaintiff.

Plaintiff claims that he is severely disabled. In 1995, he suffered a severe necrotic injury to the right side of his upper torso which resulted in approximately 10 surgeries, skin transplants and severe scarring. Sometime before the day of his arrest in this case, plaintiff had been determined to be totally disabled and was drawing Veterans' Administration disability.

Plaintiff was a resident of 7893 Hickory Nut Lane in Blount County, Tennessee. This road connects with Acorn Drive which connects with Ray Lane, a public road. Both Hickory Nut Lane and Acorn Drive are private, gravel roads owned commonly by the landowners adjacent to them. The deeds of the plaintiff and defendants Edwards in this case appear to give their respective properties easements with respect to those roads.

For many years plaintiff had maintained the roads, but for several years recently had been unable to maintain the roads because of his health. By 2005, the

roads had reached a state of disrepair. In early 2005, plaintiff agreed to work on the roads again with the knowledge and consent of a large number of the residents along both roads. Plaintiff rented and borrowed certain equipment and began road maintenance work in April 2005. On April 17, 2005, the work that plaintiff and other property owners were doing on the roads was disrupted by defendant Donna Edwards, who demanded that plaintiff and others cease work, claiming that the road was owned by her and plaintiff was trespassing. Plaintiff explained that the road was not owned by her, but was an easement and right of way jointly owned by all residents.

That day, plaintiff called the Blount County Sheriff's Department, which sent an officer to the scene. The officer told the participants he could not settle the dispute and advised the plaintiff to contact a lawyer before proceeding. Plaintiff contacted a lawyer who advised him that his maintenance of the roads was perfectly legal and it was within his rights to continue the road maintenance.

On April 19, 2005, plaintiff again began working on the roads. At approximately 3:00 p.m., defendants Donna and Helen Edwards came onto the road, screamed and cursed at the plaintiff, and demanded that he cease work, claiming that they owned the road. The plaintiff stopped his tractor and cut it off. Standing in the middle of the road, these defendants continued to curse the plaintiff,

3

accused him of destroying their road, and blocked the road so that plaintiff could not turn the tractor around. They informed plaintiff that they had called the Blount County Sheriff's Department, and when the Edwards continued to yell at and curse the plaintiff, he restarted his tractor and drove around the defendants, who continued to stand in the middle of the road.

Soon after, defendant Officer Donald drove his police car onto the scene and plaintiff pulled his tractor to the side of the road and waited for the officer. Donald talked first to Helen Edwards. Then Donald approached plaintiff, and when plaintiff tried to explain to Donald that he was maintaining a common right-of-way and attempted to show Donald the deed, Donald looked at the deed and asked if it was "signed by a judge." Donald then talked with Donna Edwards, who falsely accused plaintiff of attempting to run over Helen Edwards with the tractor. During this time, defendant Helen Edwards was smiling and waving at Donald from approximately 150 feet away. Donald requested Helen Edwards to come over, then strolled over to her. Defendant Helen Edwards, with coaching from Donald, falsely accused the plaintiff of attempting to run over her with the tractor and being "in fear of her life." Donald then arrested plaintiff for "aggravated assault." Plaintiff stated that he had not assaulted or threatened anyone and that there were several witnesses to what had happened. Donald refused to talk to any of the witnesses or pay any attention to plaintiff's story.

Donald then began to handcuff the plaintiff behind his back. Plaintiff informed Donald that he was disabled and requested to be handcuffed in front. Plaintiff requested that Donald look at the injury and surgery site. Donald took a cursory look at a small portion of it and said plaintiff "looked fine sitting on the farm tractor." Plaintiff requested Donald to handcuff him in front, but Donald refused and cuffed plaintiff behind his back. Plaintiff contends that as a result of this handcuffing he suffered an injury to his rotator cuff and great pain.

Donald then placed plaintiff in the cruiser with the windows rolled up and the air conditioning off, leaving plaintiff in the car for approximately 30 minutes, and the inside temperature became very hot. Donald and the Edwards then began talking outside the cruiser. Donald told them that their story about aggravated assault "would not hold up in court" and told them to get a "restraining order." Helen Edwards then told Donald that the tractor plaintiff was using was "stolen." The man who owned the tractor came by and Donald asked him if he owned the tractor. The man said yes. Donald informed him that the tractor was being impounded as stolen property. The man told Donald that the tractor was not stolen and that the plaintiff had permission to use it anytime he wanted. The man then took the tractor and left.

Donald then asked Helen Edwards, "Now what?" She asked Donald if he "could do anything." Donald said, "I can handle today, but you need to go to the

5

courthouse tomorrow and get a restraining order." The Edwards said they would. Donald and Helen Edwards then spent approximately 20 minutes bantering about how "pretty she was" and how "nice" Donald was. During all this time, plaintiff continued to sit in the sweltering police car in pain with his hands cuffed behind his back.

When Donald finally decided to transport plaintiff to jail, plaintiff told Donald that he would not give him any trouble and again told Donald that being handcuffed from behind was causing him injury and pain and requested that he be handcuffed in front. Donald refused. On the trip to jail, Donald told plaintiff that he was not going to charge him with "aggravated assault." Eventually, when plaintiff arrived in the booking room, he was uncuffed, searched, booked and jailed. Plaintiff was then told he was being charged with "disorderly conduct" and later released on a $1,000 bond.

> In the arrest warrant affidavit filed by Donald, he stated that he
>
> responded to 7802 Hickory Nut Way on the call of a disturbance. Upon my arrival, I made contact with the defendant on a red tractor who was yelling and cursing the neighbors around him. I then stopped the defendant in which he started yelling and cursing me. I then placed him under arrest for the above named charge all of which occurred in Blount County, TN.

6

Either known or unknown to Officer Donald, the entire arrest and portions of his conversations were recorded. According to plaintiff, these recordings indicate that the allegations contained in the arrest warrant were false. On July 18, 2005, the criminal charge against plaintiff was dismissed in the General Sessions Court for Blount County, Tennessee. On April 20, 2005, Helen Edwards filed a civil warrant in the Blount County General Sessions Court seeking a restraining order prohibiting the plaintiff and his sons from calling her "home and cell phone, coming on property, and not to stop in front of (Helen Edwards') house." The warrant was later amended to add Donna Edwards as a plaintiff. On December 13, 2005, after trial, the court found in favor of plaintiff and dismissed the civil warrant.

Because he was handcuffed behind his back for such an extended period of time, plaintiff's shoulders and neck were injured and he continues to be in pain and has continued to receive medical treatment since the injury.

II.

*Summary Judgment Standards*

Pursuant to Rule 56, summary judgment shall be rendered when requested if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

7

any material fact and that the moving party is entitled to judgment as a matter of law. It is the burden of the party seeking summary judgment to show the court that, under uncontradicted facts, the moving party is entitled to judgment as a matter of law. Summary judgment is intended to provide a quick, inexpensive means of resolving issues as to which there is no dispute regarding the material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). In assessing the validity of a summary judgment motion, the court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. However, an opponent to a motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but must set forth through competent and material evidence specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an essential element of that party's case, and on which the party will bear the burden of proof at trial. *Catrett*, 477 U.S. at 322.

III.

### *Qualified Immunity*

The doctrine of qualified immunity protects employees from suits so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This defense is governed by an objective test and not by what the defendant actually knew or believed. *Id.*

To determine whether the defendant is entitled to qualified immunity, the court must engage in a two-part inquiry. First, the court must decide whether the plaintiff has alleged facts which show a deprivation of a constitutional right. Only then should it look at the second step, and that is whether the defendant violated any clearly established law. *Id.* In *Hoot v. Pelzer*, 536 U.S. 730, 739 (2002), the Supreme Court stated:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in light of preexisting law, the unlawfulness must be apparent.

*Id.*

In the instant case, the law was clearly established well before April 19, 2005, that a reasonable officer could not handcuff a suspect in a manner obviously causing inappropriate pain or unnecessary injury. *See Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998); *Baskin v. Smith*, 50 Fed. Appx. 731 (6th Cir. 2002); *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir. 2001); *Martin v. Heideman*, 106 F.3d 1308, 1312-13 (6th Cir. 1997).

Defendant Donald contends that he did not have to take the word of plaintiff with regard to the severity of his injuries and that the handcuffs were hurting plaintiff in the manner in which they were utilized. However, that raises a question of fact. Plaintiff claims that defendant only took a cursory look at his injury and disregarded plaintiff's complaints of pain. Under the circumstances, defendant Officer Donald is not entitled to qualified immunity on the claim of excessive force. With respect to the claim of arrest without probable cause, it is beyond dispute that it has long been established that such an arrest is unconstitutional.

IV.

### *Conclusion*

In light of the foregoing, the motion for summary judgment of defendant Sheriff James L. Berrong, in his official capacity only, [Court File #17] will be granted,

and the defendant Steve Donald's motion for summary judgment [Court File #15] will be denied.

Order accordingly.

***s/ James H. Jarvis***
UNITED STATES DISTRICT JUDGE